UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
UNITED STATES OF AMERICA                          :

      v.                                                       :

GEORGE BRIDI                                              :
                                                        20 CR 18 (RMB)
          Defendant,                             :
------------------------------------------------------------------------x


**SENTENCING MEMORANDUM**




                                                                 **Louis M. Freeman**
                                                                 Attorney for George Bridi
                                                                 Freeman, Nooter & Ginsberg
                                                                 75 Maiden Lane, Suite 503
                                                                New York, NY 10038
                                                                (212) 608-0808

## APPLICATION of 18 U.S.C. §3553(A)

18 U.S.C. §3553(a) requires the imposition of a sentence that is sufficient, but not greater than necessary, after careful consideration of the 3553(a) factors. To make a proper assessment of these factors in Mr. Bridi's case, we urge the Court to consider the fact that this case represents the first arrest for Mr. Bridi, his misguided actions, though criminal, were not for financial gain and he has accepted complete responsibility for his actions.  As stated by his wife Caroline, "this criminal act is an anomaly of his character, and he will not reoffend."  Pre-Sentence Report ("PSR"), ¶53.  "My husband is a good man.  He is friendly, reliable and generous."  Exhibit A, Letter of Caroline Bridi, 1.  Probation concurs, stating his risk of re-offense is low.  See, PSR, Sentencing Recommendation, pg. 17.

Mr. Bridi has been in custody since August 23, 2020, which will amount to seventeen months at the time of sentencing.  For the entirety of his incarceration, both in Cyrus and here in the United States, the COVID-19 pandemic has been rampant.  As the Court is undoubtedly aware, the conditions of incarceration lead to an increased risk of contracting the virus.  "Lawmakers have failed to reduce prison and jail populations enough to slow down the spread of the coronavirus, causing incarcerated people to get sick and die at a rate unparalleled in the general public."  Prison Policy Initiative, "The Most Significant Criminal Justice Policy Changes from the COVID-19 Pandemic," https://www.prisonpolicy.org/virus/virusresponse.html (updated 12/23/21).

Currently, the entire tri-state area is experiencing a surge in Omicron COVID-19 cases. The Essex County Correctional Facility has suspended in-person attorney and social visits and the inmates are "locked down."  Mr. Bridi had a history of cardiac issues and currently suffers from high blood pressure and high cholesterol.  People with heart conditions are in the highest

risk category for severe illness and even death if they should contract the virus. According to the Centers for Disease Control and Prevention ("CDC"), "having heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19." <u>CDC</u>, COVID-19, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated 12/14/21).  "It continues to look like older people with coronary heart disease or high blood pressure are more likely to develop more severe symptoms. Stroke survivors and those with heart disease, including high blood pressure and congenital heart defects, may face an increased risk for complications if they become infected with the COVID-19 virus."  <u>American Heart Association</u>, "Coronavirus precautions for patients and others facing higher risks, Who is at risk of infection or complications?" https://www.heart.org/en/coronavirus/coronavirus-covid-19-resources/coronavirus-precautions-for-patients-and-others-facing-higher-risks.

According to a study published on October 6, 2020 in the American Journal of the Medical Sciences,

> factors associated with mortality in COVID-19 patients include male sex, advanced age, and presence of hypertension, diabetes mellitus, cardiovascular diseases, and cerebrovascular diseases as well as complications of acute cardiac injury, cardiomyopathy, and heart failure. In a large series of 44,672 COVID-19 patients, those with coronary heart disease had a fatality rate of 10.5% higher than the overall mortality rate of 2.3%. The coexistence of coronary heart disease and the myocardial injury was associated with the highest mortality rate.

Chang, Wei-Ting et al. "Cardiac Involvement of COVID-19: A Comprehensive Review." Am J Med Sci. 2021;361(1):14-22, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7536131/#!po=4.48718 (footnotes omitted).

Although Mr. Bridi is vaccinated and boosted, vaccine breakthrough cases have been on the rise,[1]  Although the CDC reports that "fully vaccinated people with a vaccine breakthrough infection are less likely to develop serious illness than those who are unvaccinated and get COVID-19,[2] the risk is not zero.

For a fully-vaccinated adult aged 50-64, the rate of COVID-19 associated hospitalization in approximately 3.9%.



CDC, COVID Data Tracker, Rates of laboratory-confirmed COVID-19 hospitalizations by vaccination status, https://covid.cdc.gov/covid-data-tracker/#covidnet-hospitalizations-vaccination.

---

[1] "The daily rate of breakthrough COVID-19 infections among New Yorkers grew more than seven-fold in December but was still dwarfed by new infections among the unvaccinated, newly released data shows."  USA Today, NY breakthrough infections grow sevenfold, but unvaccinated 13 times more likely to wind up in hospital: COVID-19 updates, *available at* https://www.usatoday.com/story/news/health/2022/01/11/covid-omicron-variant-pfizer-cases/9165512002/ (updated 1/11/22).

[2] CDC, "The Possibility of COVID-19 after Vaccination: Breakthrough Infections, What We Know about Vaccine Breakthrough Infections," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (updated 12/17/21).

For the entirety of his incarceration, Mr. Bridi has lived under COVID-19 restrictions and not been able to have any social visitors.³ Regardless of the rationale behind the lockdowns and restrictions, it cannot be denied that the sentences of those incarcerated during this time are "harsher and more punitive than would otherwise have been the case." See, United States v. Rodriguez, 492 F. Supp. 3d. 306, 311 (S.D.N.Y. 2020). ("This is because the federal prisons, as 'prime candidates' for the spread of the virus, see United States v. Al Kassar, 480 F. Supp. 3d 582, 584 (S.D.N.Y. 2020), have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal.").

Not only has Mr. Bridi been adversely affected because of the conditions of confinement, but his wife and sons have suffered greatly as well. His sons have been negatively impacted due to being bullied by their peers over their father's arrest and Mr. Bridi's wife continues to suffer financially being on her own.

> 17 months is a long time to miss out on your children's lives—in the time missed W▮▮▮ and G▮▮▮▮ have become teenagers and matured physically and mentally. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ They have both missed their Dad terribly, and he has missed out on so much of their young lives during the time he has been away from us. George will never recover this time with them, and that fact alone fills him with regret and remorse.
>
> George's actions and the consequences have also placed a huge financial strain on the whole family. Myself and our children have suffered the effects of having our household income cut in half, George's sister has had to help financially support George whilst he has been in prison, and my own parents have paid for lawyer's fees during the extradition process.

---

³ There was a window of time when the Essex County Correctional Facility permitted social visits in 2021 but Mr. Bridi's wife and children were unable to afford travel to the United States. See, PSR, ¶53. COVID protocols did not allow visitation while he was jailed in the Republic of Cyprus. Id.

4

Exhibit A, 2.  Mr. Bridi's parents are also in poor health and worry about ever seeing their son again.  See, id.

In consideration of Mr. Bridi's low risk of recidivism and future harm to the community, we ask the Court to consider his age and the fact that this is his first arrest and an aberration in otherwise law-abiding life.  Mr. Bridi is fifty-three years old, which places him in the second lowest category of recidivism rate by age:



United States Sentencing Commission, "Recidivism Among Federal Offenders: A Comprehensive Overview," March 2016, p. 23, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.  Having zero criminal history points, he is also in the lowest category of recidivism rate by criminal history points.  Id. at p. 18.

18 U.S.C. §3553(a) instructs that the sentence must be sufficient but not greater than necessary to satisfy the purposes of sentencing listed therein.  Pursuant to U.S.S.G. 18 U.S.C. § 3553(a), in light of all of the mitigating circumstances present here, including the fact that Mr. Bridi has been incarcerated for the past seventeen months, has medical conditions that place him

in the highest risk category for severe illness should he contract the virus and is highly unlikely to reoffend, a downward variance is appropriate.

Accordingly, when the Court considers Mr. Bridi's personal history and characteristics and acceptance of responsibility against the seriousness of the crime and the need for the sentence imposed, it is clear that a sentence of 17 months' incarceration or time served balances the sentencing factors listed in 18 U.S.C. §3553(a). Such a sentence provides Mr. Bridi with specific deterrence to not commit any future crimes and also provides the public with a message of general deterrence to not commit crimes of this nature.

## BACKGROUND

On January 8, 2020, a three-count Indictment was filed against Mr. Bridi charging 1) a conspiracy to criminally infringe copyrighted works in violation of 17 U.S.C. §§ 506(a)(1)(B) and 2) conspiracy to commit wire fraud, in violation of 18 U.S.C. §1343 and 3) conspiracy to transport stolen goods in violation of 18 U.S.C. §§ 2314.

Mr. Bridi was initially arrested on August 23, 2020 in the Republic of Cyprus and detained there until his extradition to the United States. On August 31, 2021, he arrived in the Southern District of New York; on September 1, 2021, he was arraigned on this indictment. He was ordered detained and is currently incarcerated at the Essex County Correctional Facility. On November 18, 2021, Mr. Bridi pled guilty before Your Honor to Count One, conspiracy to criminally infringe copyrighted works.

Pursuant to the written plea agreement, dated October 26, 2021, the parties stipulate to the following Guidelines calculation:

1. Pursuant to U.S.S.G. 2X1.1, the base offense level is the base offense level from the Guidelines for the underlying substantive offense, which refers to U.S.S.G. §2B5.3, the

6

provision applicable to the substantive offense of copyright infringement.

2. Pursuant to U.S.S.G. §2B5.3(a), the base offense level is eight.

3. Pursuant to U.S.S.G. §2B5.3(b)(1)(B), because the infringement amount exceeded $6,500, the offense level is adjusted according to the §2B1.1 table.

4. Pursuant to U.S.S.G. §2B5.3, cmt., n.2(A)(i), the "infringement amount" is equal to the retail value of the infringed item multiplied by the number of infringing items. Here, as the infringement amount is more than $95,000 and less than $150,000, the base offense level is increased by eight levels.

5. Pursuant to U.S.S.G. §2B5.3(b)(2), because the offense involved the distribution of work being prepared for commercial distribution, the offense level is increased by two levels.

6. Pursuant to U.S.S.G. §2B5.3(b)(2), because the offense involved the uploading of infringing items, the offense level is increased by two levels.

7. Pursuant to U.S.S.G. §2B5.3(b)(2), because the offense was not committed for commercial advantage or private financial gain, the offense level is decreased by two levels.

8. Pursuant to U.S.S.G. § 3B1.1(b), because the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants, the offense level is increased by three levels.

9. Pursuant to U.S.S.G. § 3E1.1(a) and (b), if the defendant has clearly demonstrated his acceptance of responsibility for this conduct, a 3-level reduction is warranted.

10. In accordance with the above, Mr. Bridi's applicable Guidelines offense level is

18.

11. Mr. Bridi has zero criminal history points, placing him in Criminal History Category I.

12. Accordingly, Mr. Bridi's stipulated Guidelines range is 27 to 33 months' incarceration.

13. Further, Mr. Bridi admits to the forfeiture allegation with respect to <u>Count 1</u> of the Indictment and agrees to forfeit to the United States, any property used or intended to be used to commit or facilitate the commission of the offense; any property constituting and derived from proceeds obtained from the offense, and a sum of money representing the amount of proceeds traceable to the commission of the commission of the offense.

14. Mr. Bridi also agrees to any restitution ordered by the Court.

<u>See</u>, <u>PSR</u>, ¶6.

## PERSONAL HISTORY AND CHARACTERISTICS[4]

### Personal and Family History

Mr. Bridi is fifty-two years of age and was born on October 22, 1969 in the Republic of Ghana, West Africa to Ghassam and Titina Bridi. His parents are currently separated. His father is eighty years old and lives in England. His mother is seventy-six years old and lives in the Republic of Cyprus. They are both in poor health. Prior to his arrest in this matter, Mr. Bridi was providing care for his father and a caretaker had to be hired in Mr. Bridi's place after his arrest. Mr. Bridi was on his way to visit his mother in the Republic of Cyprus when he was arrested. He speaks to both of his parents daily via Skype. They are aware of the charges in this case and remain supportive of their son.

---

[4] Information for this section was obtained from discussions with Mr. Bridi and a review of the PSR, Part C. Offender Characteristics.

8

Mr. Bridi has two biological sisters, who live in the Republic of Cyprus and two paternal siblings. His paternal brother lives in the Republic of Ghana and his paternal sister lives in the United Arab Emirates. He speaks to his siblings on a daily basis via Skype; they are aware of the charges in this case and remain supportive of their brother.

During Mr. Bridi's childhood, he and his family lived in the Republic of Ghana as his father was employed at a sawmill in the country. However, when he was eleven years old, his parents separated; his mother relocated Mr. Bridi and his sisters to the Republic of Cyprus, her native country and his father remained in the Republic of Ghana. Mr. Bridi kept in touch with his father and his father provided the family with financial support until the political unrest began in the Republic of Ghana and he was no longer able to work. At this point, at the age of fifteen years old, Mr. Bridi began working to assist his mother with supporting the family. Mr. Bridi continued to live with his mother until he was twenty-seven years old. In 2012, when he was forty-three years old, he moved to England.

Mr. Bridi and his wife Caroline married in the Republic of Cyprus in 2005. They have two children, twin boys, W▇▇ and G▇▇, who are fourteen years old. Mr. Bridi speaks with his wife and children daily but he has not been able to have an in-person visit since he was arrested in Cyprus in August of 2020, because of COVID-19. His wife and children are aware of his charges and remain supportive, although they have suffered adverse consequences because of his offense conduct. His wife is currently having trouble paying the family's expenses and his sons have been harassed by their peers as the news of their father's arrest was publicized. As a result, W▇▇ has become ▇▇▇ and George has developed ▇▇▇▇▇▇.

Mr. Bridi was previously married to Georgina Harder and they have one son together, Dominic. He is twenty-seven years old and lives in the Republic of Cyprus. Dominic describes his father as "a great man and a loving parent who has always taken care of me and given me the love and affection that any child hopes to have from their father." Exhibit B, Letter of Dominic Bridi. "I speak with my father on a daily basis and he always tells me how much he wishes that he could be back with his loving family." Id.

**Educational and Employment History**

Mr. Bridi completed high school in the Republic of Cyprus. From the age of fifteen until he was forty-three, Mr. Bridi was a disc jockey. He began as a mobile disc jockey and worked at military bases. He eventually was employed at various nightclubs in the Republic of Cyprus. After Mr. Bridi and his wife and sons moved to England, he managed a gas station in the Isle of Wight for approximately four years.

From 2018 until his arrest, he drove a taxi and was able to purchase his own vehicle in 2020. However, his wife was forced to sell the vehicle after his arrest. The co-owner of the taxi company, Claudiu Vitan, describes Mr. Bridi as a "very reliable and dependable member of our team." Exhibit C, Letter of Claudiu Vitan, Managing Partner, LeaderCabs Ltd. Mr. Bridi worked on contracts with the local authority to provide transportation for children with disabilities and special needs. "George regularly undertook these bookings and built a great rapport with the children and their carers who trusted him completely to get them to school/home safely." Id. Mr. Vitan states that he would not hesitate in rehiring Mr. Bridi upon his return to the UK. Id.

In her letter to the Court, Mrs. Bridi recounts that her husband "has helped many vulnerable people who have found themselves stranded late at night, without money to get home, by driving them safely home without charging a fare."  Exhibit A, 1.

**Physical Health**

Mr. Bridi currently suffers from high blood pressure and high cholesterol.  He is provided medication by the Essex County Correctional Facility for these conditions.  In 2013, he suffered a heart attack and was told that he had three blocked arteries.  However, he decided not to have the surgery recommended by his doctor at the time.

## CONCLUSION

George Bridi is scheduled to be sentenced by Your Honor on February 7, 2022. Because of the facts and circumstances of this case, including his personal history and characteristics, acceptance of responsibility, low risk of recidivism and the fact that the offense involved no financial gain for Mr. Bridi, we urge the court to use the discretion granted to it by Booker and to impose a fair and reasonable sentence of time served.

Respectfully Submitted,

/s/ Louis M. Freeman
Louis M. Freeman

Dated: January 19, 2021
　　　　New York, New York