

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 27, 2022

**BY CM/ECF**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *United States v. George Bridi*, 20 Cr. 18 (RMB)

Dear Judge Berman:

    The defendant in the above-captioned case is scheduled to be sentenced on February 7, 2022 at 9:00 a.m. For the reasons set forth below, the Government believes that a sentence within the Guidelines range of 27 to 33 months' imprisonment would be sufficient, but not greater than necessary, to meet the purposes of sentencing.

**I. Offense Conduct**

    **A. Background on the Sparks Group**

    As described in the Presentence Investigation Report ("PSR"), between in or around 2016 and in or around 2020, the United States Postal Inspection Service and Homeland Security Investigations investigated an international criminal conspiracy known as the "Sparks Group," which began as early as 2011. The primary objective of the Sparks Group was to fraudulently obtain DVDs and Blu-Ray discs for copyrighted movies and television shows prior to their retail release date, compromise the copyright protections on the discs, reproduce and upload the copyrighted content to servers controlled by the Sparks Group, and disseminate the copyrighted content on the Internet for public consumption before the DVDs and Blu-Ray discs were made available for sale by retailers to the public. Over the course of the conspiracy, the Sparks Group successfully reproduced and disseminated at least 1400 movies and television shows prior to their retail release date, including nearly every movie released by major production studios. The Sparks Group has caused tens of millions of dollars in losses to film production studios. (PSR ¶ 11).

    The Sparks Group generally worked as follows: First, members of the Sparks Group, including the defendant George Bridi, obtained DVDs and Blu-Ray discs from wholesale distributors up to several weeks prior to their retail release date. To do so, members of the Sparks

Group, including the defendant, made various material misrepresentations and omissions to the wholesale distributors concerning, among other things, the reasons that members of the Sparks Group were obtaining DVDs and Blu-Ray discs prior to the retail release date. The Sparks Group continuously searched for and solicited distributors and retailers that could be used to obtain DVDs and Blu-Ray discs as early as possible. (PSR ¶ 13).

Once they obtained the DVDs and Blu-Ray discs, members of the Sparks Group, including the defendant, used computers with specialized software that compromised the copyright protections on the discs (a process known as "cracking" or "ripping") and reproduced and encoded the content in a high-definition format that could be easily copied and disseminated over the Internet. (PSR ¶ 14). Members of the Sparks Group, including the defendant, then uploaded copies of the copyrighted content onto servers controlled by the Sparks Group, where members of the Sparks Group further reproduced and disseminated the content on streaming websites, peer-to-peer networks, torrent networks, and other servers accessible to members of the public, all before the retail release date for the DVDs and Blu-Ray discs. The Sparks Group identified its reproductions by encoding the filenames of the reproduced copyrighted content with the tags "SPARKS," "DRONES," "ROVERS," "GECKOS," and "SPRINTER," among others. The Sparks Group also uploaded photographs of the discs in their original packaging to its servers to demonstrate that the reproductions originated from authentic DVDs and Blu-Ray discs. To avoid law enforcement detection, members of the Sparks Group communicated with each other using Internet Relay Chat and secure end-to-end encryption messaging platforms like Threema. (PSR ¶ 15).

In coordination with law enforcement authorities in 18 other countries, dozens of servers around the world controlled by the Sparks Group, including in North America, Europe, and Asia, were taken offline on August 26, 2020. Prior to August 26, 2020, the Sparks Group had utilized these servers to illegally store and disseminate copyrighted content to members around the globe. (PSR ¶ 14).

### B.   The Defendant's Participation in the Sparks Group

Between 2016 and March 2020, the defendant participated in the Sparks Group in various capacities. The defendant fraudulently ordered pre-release DVDs and Blu-Ray discs from wholesale distributors in New York City and New Jersey. In emails and conversations with the distributors, the defendant claimed that the discs would be sent to "aggregators" in the United States that would send the discs to the defendant. In fact, the defendant was arranging for the discs to be sent to members and associates of the Sparks Group, including co-defendant Jonatan Correa and at least two other associates of the Sparks Group based in the New York City metropolitan area ("CC-1" and "CC-2"). The defendant did not tell distributors that he intended to commit copyright infringement with the pre-release discs. (PSR ¶ 16).

In or around 2015 or 2016, the defendant recruited CC-2 to assist in the Sparks Group's operations and served as CC-2's supervisor. The defendant provided CC-2 with special software that CC-2 installed on CC-2's computer to compromise the copyright protections on the discs, which CC-2 then uploaded to servers that were controlled by the defendant. The defendant also instructed CC-2 to take a photo "proof" showing the photo of the disc along with the name of the

Sparks Group-affiliated sub-group (i.e. "SPARKS," "DRONES," etc.) to demonstrate that the content had been ripped from a genuine Blu-Ray disc obtained by the Sparks Group. The defendant repeatedly instructed CC-2 that uploading the content as soon as possible was critical to the Sparks Group's success because it was a "race" for the Sparks Group to make the copyrighted content available on the Internet as soon as possible. In exchange for CC-2's participation in the Sparks Group, the defendant provided CC-2 with access to copyrighted movies on CC-2's server. The defendant also had an account for screen-sharing software that allowed the defendant to track the progress of discs that had been sent to CC-1 to be uploaded to servers controlled by the Sparks Group. The defendant exchanged financial payments with other members of the Sparks Group, including co-defendant Umar Ahmad, for the reimbursement of disc purchases. (PSR ¶ 17).

Based on records from a Brooklyn and New Jersey-based distributor defrauded by the defendant, the defendant purchased approximately 600 discs from the distributor between June 2017 and October 2019, which were all delivered to CC-1, CC-2, or Correa. The Government believes that a conservative and reasonable estimate of the loss amount that is reasonably foreseeable to the defendant is approximately $120,000. (PSR ¶¶ 18-19).

On January 8, 2020, the 20 Cr. 18 Indictment (the "Indictment") was filed, which charged the defendant with participating in a conspiracy to commit copyright infringement, in violation of Title 18, United States Code, Sections 371, 2319(c)(1) and (d)(1), and Title 17, United States Code, Sections 506(a)(1)(B) and (C) (Count One); participating in a conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 (Count Two); and participating in a conspiracy to commit interstate transportation of stolen property, in violation of Title 18, United States Code, Sections 371 and 2314 (Count Three). The defendant was arrested in Cyprus on August 23, 2020. The defendant did not consent to extradition, and the Cyprus District Court issued an order denying the defendant's request to dismiss the Government's extradition request on March 31, 2021. The defendant chose not to appeal, and the defendant was extradited to the United States on August 31, 2021.

## II. The Defendant's Plea and Applicable Guidelines Range

On November 18, 2021, the defendant pleaded guilty to Count One of the Indictment pursuant to a plea agreement. Pursuant to U.S.S.G. § 2B5.3(a), the plea agreement stipulated that the base offense level is 8. Pursuant to U.S.S.G. § 2B5.3(b)(1)(B), the plea agreement stipulated that the offense level is adjusted according to the table from U.S.S.G. § 2B1.1 because the infringement amount exceeded $6,500. Pursuant to U.S.S.G. § 2B5.3 cmt. N.2(a)(i), the infringement amount is equal to the "retail value of the infringed item" multiplied by the "number of infringing items." Because the infringement amount was more than $95,000 and less than $150,000, the plea agreement stipulated that the offense level is increased by 8 levels. Pursuant to U.S.S.G. § 2B5.3(b)(2), the plea agreement stipulated that a two-level enhancement applied because the offense involved the distribution of a work being prepared for commercial distribution. Pursuant to U.S.S.G. § 2B5.3(b)(3)(A), the plea agreement stipulated that a two-level enhancement applied because the offense involved the uploading of infringing items. Pursuant to U.S.S.G. § 2B5.3(b)(4), the plea agreement stipulated that a two-level decrease applied because the offense was not committed for commercial advantage or private financial gain. Pursuant to U.S.S.G. § 3B1.1(b), the plea agreement stipulated that a three-level enhancement applied because the

defendant was a manager or supervisor and the criminal activity involved five or more participants. Assuming a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the plea agreement stipulated that the total offense level is 18. The plea agreement also stipulated that the defendant has zero criminal history points, resulting in a Criminal History Category of I. As a result, the plea agreement stipulated that the applicable Guidelines range was 27 to 33 months' imprisonment.

The PSR, prepared by the Probation Office on January 10, 2022, also found that the defendant's Guidelines range was 27 to 33 months' imprisonment. (PSR ¶¶ 25-41, 73).

### III. Discussion

#### A. Applicable Law

Although *United States* v. *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

#### B. A Sentence Within the Guidelines Range is Reasonable in this Case

The Government submits that a sentence within the Guidelines range of 27 to 33 months' imprisonment is sufficient, but not greater than necessary, in this case to reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense.

As an initial matter, the defendant is being sentenced for serious criminal conduct. For years, the defendant knowingly and willfully violated the copyright laws of the United States by participating in the Sparks Group, a sophisticated criminal conspiracy that obtained and disseminated copyrighted movies and television shows all over the Internet, including copyrighted works that were being prepared for retail release. The defendant had multiple functions in the Sparks Group. He defrauded a disc distributor based in Brooklyn and New Jersey to obtain DVDs and Blu-Ray discs prior to the retail release date. He arranged for the discs to be delivered to other members and associates of the Sparks Group, who then "cracked" the discs using special software that compromised the copyright protections on the discs. He then arranged for the copyrighted works to be uploaded to servers controlled by the Sparks Group, where the movies and television shows were disseminated across the Internet. Over the course of the conspiracy, the Sparks Group successfully reproduced and disseminated hundreds of movies and television shows prior to their retail release date, causing film production studios tens of millions of dollars in losses.

The defendant also played a much more significant role in the Sparks Group's operations than other members of the group, including co-defendant Jonatan Correa. Unlike Correa, the defendant served as a manager and supervisor in the Sparks Group, and he recruited at least one other individual ("CC-2") to participate in the Sparks Group's operations. The defendant supervised CC-2 and provided detailed instructions to CC-2 regarding how and when copyrighted movies would arrive to CC-2's home to be uploaded to the Sparks Group. The defendant repeatedly urged CC-2 to upload the discs as soon as possible, reflecting the defendant's vested interest in helping the Sparks Group distribute the copyrighted content around the Internet as soon as possible and "race" against rival organizations. The defendant also was the source of the copyrighted content—he purchased the discs from the distributor by using material misrepresentations and arranged for the discs to be delivered to lower-level members of the Sparks Group. Acting from outside the United States, the defendant played a key role in the Sparks Group's operations by facilitating and supervising copyright infringement activities taking place in the New York City metropolitan area.

Finally, the Government respectfully submits that a significant sentence here is necessary in the interests of general deterrence. Copyright infringement causes millions of dollars in losses to movie production studios on an annual basis, which ultimately harms the individual employees who depend on this industry for their livelihood. Many members of these criminal copyright organizations—like the defendant—operate from outside the United States and are difficult to investigate and apprehend. Indeed, one of the co-defendants in this case remains at-large in Norway. As a result, a significant sentence is needed here to promote respect for the copyright laws and to protect the producers of creative content in the United States.

## V. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 27 to 33 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

                        Respectfully submitted,

                        DAMIAN WILLIAMS
                        United States Attorney

By:     /s/ Andrew K. Chan
           Andrew K. Chan / Mollie Bracewell
           Christy Slavik
           Assistant United States Attorney
           (212) 637-1072 / 2218 / 1113

cc: Louis Freeman, Esq.